**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT T. JOHNSON,

    Plaintiff,

        v.

WILD ACRES LAKES PROPERTY &
HOMEOWNERS ASSOCIATION, et al.,

    Defendants.

NO. 3:07-CV-1384

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the Motion for Summary Judgment of Defendants Kevin Varcoe ("Varcoe") and Peter Gutowski ("Gutowski").[1] (Doc. 54.) Plaintiff raises claims against these Defendants pursuant to 42 U.S.C. § 1983 for violation of his constitutional rights. Defendants move for summary judgment as to Count I of Plaintiff's amended complaint, against Defendant Varcoe, and Count II of the amended complaint, against Defendant Gutowski. For the reasons stated below, the Court will grant in part and deny in part Defendants' motion. The Court will deny summary judgment as to Count I, but grant the motion as to Count II.

This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction").

---

[1]    The present motion for summary judgment was also filed on behalf of Defendant Michael Mulvey. (Doc. 54.) However, on December 2, 2008, the Court issued an Order approving the voluntary dismissal of all claims and cross-claims against Defendant Mulvey. (Doc. 52.)

**I.     Factual Background**

The facts most relevant to the present motion and taken in the light most favorable to Plaintiff are as follows.  Plaintiff and his wife live in a residential community called Wild Acres.  On February 27, 2007, Plaintiff's neighbor, Tom Skala, went to Plaintiff's house to use his laundry machine.  (R. Johnson Dep. 31-32, Aug. 28, 2008.)  Also on that date, Defendant Varcoe, a Pennsylvania State Police ("PSP") officer, was advised by the PSP dispatcher that Skala had allegedly violated a Protection from Abuse Order, threatened his wife, and threatened to shoot any police officer who tried to arrest him.  (Defs.' Statement of Facts ¶ 8, Doc. 55 (hereinafter "SOF");[2] Varcoe Dep. 10-11, Aug. 19, 2008.)  Varcoe was dispatched to Wild Acres, along with Trooper Jennifer Mlodzienski, because Skala's car was seen at a residence in the development.  (SOF ¶ 9.)  When they arrived, Wild Acres security personnel told Varcoe that Skala was inside the residence and had not left.  (*Id*. ¶ 11.)  The PSP officers went to the door of Plaintiff's home, accompanied by Russell Eilber,[3] a Wild Acres security guard, while another security guard went to the back of the house.  (*Id*. ¶¶ 13, 18.)  The officers did not obtain a description of Skala before approaching Plaintiff's house. (Varcoe Dep. 13.)

When Varcoe knocked, Plaintiff, who was sitting alone at a table, heard and answered the door.  (SOF ¶¶ 14, 19.)  At the time, he had a licensed, loaded handgun located at the

---

[2]     The Court refers to the Defendants' Statements of Material Facts to which they contend there is no dispute, submitted pursuant to Local Rule 56.1, only where facts are admitted by Plaintiff.

[3]     Eilber is a remaining defendant in this action, but is not party to the present motion for summary judgment.

center of his back in a back brace.  Plaintiff, a retired police officer, had been carrying a gun every day for thirty-five years.  When he answered the door, Varcoe was standing directly across the threshold from him.  Mlodzienski was behind Varcoe and Eilber was behind her. (R. Johnson Dep. 66-68.)  According to Plaintiff, Varcoe asked why Skala's car was parked in his driveway.  Plaintiff hesitated in answering.  Varcoe then asked who Plaintiff was. Plaintiff answered, "I'm Bob Johnson.  I live here."  Varcoe asked for identification.  Before retrieving his wallet, Plaintiff informed Varcoe that he was armed and told him to take the gun.  (*Id*. at 72-76.)  Varcoe took Plaintiff's gun, then grabbed his arm, yanked him from the threshold onto the front landing of the house, pushed him down to his knees, and handcuffed him (*Id*. at 77-82, 276.)

Plaintiff testified at deposition that he began screaming in pain and told Varcoe he had a bad back, but Varcoe continued to hold and push down on the handcuffs.  While continuing to scream in pain, Plaintiff asked why Varcoe was doing this and the officer answered he was investigating a crime.  (*Id*. at 83-84.)  Plaintiff estimated that at least ten minutes went by before his wife, who had been drying her hair in an upstairs bedroom, came downstairs, informed the officers Plaintiff had a bad back and had experienced four strokes, asked that he be let up, and provided them his identification.  (*Id*. at 64, 86-87.)  During that time, the handcuffs were continuously held and pushed down.  (*Id*. at 285, 287.)  Plaintiff was uncuffed and allowed to stand within several minutes after his wife provided his identification.  (*Id*. at 88.)  The officers then asked whether Skala was inside the house.  (*Id*. at 87-88.)  Plaintiff went back inside the house and encouraged Skala to present himself to the officers.  Skala did so and was taken into custody.  (*Id*. at 90-92.)

Two days later, on March 1, 2007, while driving his vehicle, Plaintiff observed a Wild Acres security truck pull into the drive-in window of a local bank. Plaintiff followed and pulled his vehicle nearby the Wild Acres truck. He called out to the Wild Acres security guards in the truck to come over and talk to him. He wanted to question them regarding the February 27 incident at his home. The driver attempted to back the truck up and Plaintiff similarly backed his vehicle. Plaintiff then observed one of the security guards using a walkie-talkie and a cell phone. Suspecting he might have called the police, Plaintiff drove to the Wild Acres security office. (*Id*. at 121.) During this time, Plaintiff's loaded handgun was located in the glove box of his vehicle. (*Id*. at 120, 126.)

Outside the Wild Acres office, Plaintiff spoke to manager Harold Davis,[4] who relayed the guards' claim that Plaintiff had drawn a gun on them at the bank. He asked if Plaintiff had a gun. Plaintiff answered that there was a gun in the glove box of his vehicle. Davis said PSP officers were on their way and asked if Plaintiff would wait. Plaintiff agreed. (*Id*. at 128.) At some point before the PSP officers arrived, Plaintiff's legs collapsed, he fell to the ground, and was unable to rise. (*Id*. at 131-132.) An ambulance was called on his behalf and he was placed on a plastic sheet and covered by a blanket. (SOF ¶¶ 102, 103.) Plaintiff asserts he was suffering from a stroke. (R. Johnson Dep. 545, 549.)

When two PSP officers arrived on the scene, Plaintiff was still on the ground. The officers were informed that an ambulance was on its way. (SOF ¶ 114.) Within a few minutes of arriving, one of the officers, Defendant Gutowski, approached Plaintiff in full uniform. (SOF ¶ 122; Gutowski Dep. 20, July 28, 2008.) He identified himself and informed

---

[4]     Davis is a remaining defendant in this action, but is not party to the present motion for summary judgment.

Plaintiff that an ambulance was coming.  (SOF ¶ 123; Gutowski Dep. 20.)  He asked Plaintiff for permission to search his vehicle and Plaintiff consented.  (R. Johnson Dep. 142.)  He told Gutowski that a gun was located in the glove box.  (SOF ¶ 124.)  Plaintiff admits that he did not inform the officer that he believed he was suffering from a stroke.  He was coherent and lucid while answering Gutowski's request, though he recalls "moaning and groaning the whole time [the officers] were there."  (SOF ¶¶ 117, 128; R. Johnson Dep. 142, 144-45.)  Gutowski searched in the glove box of Plaintiff's unlocked vehicle, located the gun, replaced it in the glove box, and locked the vehicle.  (SOF ¶ 131.)  Shortly thereafter, an ambulance arrived to take Plaintiff to a hospital.  (SOF ¶ 134.)

## II.    Procedural Background

On July 30, 2007, Plaintiff filed a complaint raising a number federal and state law claims against both employees of Wild Acres and PSP officers based on the February 27 and March 1 incidents.  (Doc. 1.)  With leave of the Court, he filed an amended complaint on March 14, 2008.  After the close of discovery, Plaintiff voluntarily dismissed several defendants and claims, including several claims against Gutowski.  (Doc. 52.)  Of the remaining claims, those relevant to the present motion are Counts I and II of the amended complaint.  Count I raises a claim pursuant to § 1983 against Varcoe, alleging violation of the Fourth and Fourteenth Amendments to the U.S. Constitution based on his involvement in the February 27, 2007 incident at Plaintiff's home.  Count II raises a claim pursuant to § 1983 against Gutowski, alleging violation of the Fourth and Fourteenth Amendments based on his search of Plaintiff's vehicle on March 1, 2007.  Varcoe and Gutowski filed the present motion for summary judgment on December 2, 2008. (Doc. 54.) After an extended deadline approved by the Court, Plaintiff filed a brief in opposition to the motion on March 23, 2009.

(Doc. 73.)  After receiving an extended deadline from the Court, Defendants filed a reply brief on April 28, 2009.  (Doc. 87.)  The motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

6

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

Plaintiff's amended complaint raises claims against Varcoe and Gutowski pursuant to § 1983 for violation of his constitutional rights. To prevail on a § 1983 claim, a plaintiff must demonstrate that a state actor deprived him of a federally protected right, privilege, or immunity. 42 U.S.C. § 1983; *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). The parties do not dispute that Varcoe and Gutowski, as PSP officers, acted under color of state law during the events giving rise to this suit.

### I.    Fourteenth Amendment Claims

In Counts I and II of Plaintiff's amended complaint, he includes allegations pursuant

to the due process clause of the Fourteenth Amendment.  In Count I, Plaintiff alleges that Varcoe's use of force against Plaintiff constitutes a violation of the Fourth and Fourteenth Amendments.  In Count II, he alleges that Gutowski's warrantless search of Plaintiff's vehicle constitutes a violation of the Fourth and Fourteenth Amendments.

Defendants correctly note that Plaintiff may not raise an independent substantive due process claim in the context of Counts I and II.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Here, the Fourth Amendment provides an explicit textual source of constitutional protection for the harms alleged by Plaintiff, namely an unreasonable seizure and unreasonable search.

In response, Plaintiff concedes that he does not raise independent substantive due process claims, but invokes the clause for the well-settled proposition that the Fourth Amendment applies to the states through the due process clause of the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).  Thus, Plaintiff invokes the Fourteenth Amendment as the textual vehicle through which he may apply the substantive law of the Fourth Amendment to the state actors named in Counts I and II.  Because Plaintiff alleges violations of the due process clause solely for this purpose, the Court need not strike allegations regarding the Fourteenth Amendment in the Counts.

## II.      Excessive Force – Count I

In Count II of Plaintiff's amended complaint, he raises a claim against Varcoe for the

use of excessive for in violation of the Fourth Amendment. The Fourth Amendment protects individuals against unreasonable search and seizure by the government. "Use of excessive force by a law enforcement officer is considered a 'seizure' under the Fourth Amendment...." *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)

Defendants argue that Varcoe is entitled to summary judgment in his favor as to Plaintiff's excessive force claim because Varcoe did not seize Plaintiff. They argue in the alternative that, even if Varcoe seized Plaintiff, the seizure was objectively reasonable and thus did not violate the Fourth Amendment. Finally, they argue that Varcoe is entitled to qualified immunity. The Court will address Defendants' arguments in turn.

A.   Whether Varco Seized Plaintiff

Defendants first argue that Varcoe's actions did not violate the Fourth Amendment because he did not seize Plaintiff. "An officer seizes a person whenever he 'restrains the freedom of a person to walk away[.]'" *Curley v. Klem*, 499 F.3d 199, 203 n.4 (3d Cir. 2007) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). It is clear that Plaintiff was seized when he was handcuffed by a police officer.

Defendants do not appear to argue that Plaintiff was not seized at all, but rather that Varcoe was not responsible for the seizure. They argue that Varcoe did not handcuff Plaintiff, hold his handcuffs, or push down on them. This is supported by the deposition testimony of Varcoe, Mlodzienski, and Eilber, who agree that Mlodzienski placed handcuffs on Plaintiff. (Varcoe Dep. 27; Mlodzienski Dep. 23, Sept. 10, 2008; Eilber Dep. 42, Sept. 10, 2008.)

Defendants acknowledge that Plaintiff provides a contrary version of events in his deposition, but argue that his testimony does not create a genuine issue of fact because it

is not credible.  They argue that, even by Plaintiff's account of events, he was turned away from the officers before being handcuffed and was not in a physical position to see who handcuffed him or held his handcuffs.  (R. Johnson Dep. 274-277.)  They further argue that the handcuffs could not have been pulled or pushed because plaintiff does not allege injury to his shoulders.  (*Id*. at 482.)

Defendants arguments ask the Court to invade the province of the jury.  It is the jury's role, not the judge's, to make credibility determinations, weigh evidence, and draw legitimate inferences.  *Anderson*, 477 U.S. at 255.  In ruling on a motion for summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id*.  Plaintiff testified that Varcoe pulled him from the door of his house, handcuffed him, and held the handcuffs while pressing down.  Even if Plaintiff was not in a physical position to see who handcuffed and held him, this does not force the conclusion that he could not identify the person.  One can reasonably infer, for example, that Plaintiff could distinguish the voice closest to him while being handcuffed and held.  Further, whether Plaintiff's version of events should be believed based on the location of his alleged injury is a credibility determination more appropriate for a jury.

Additionally, the Court notes that in the deposition testimony relied on by Defendants, Varcoe and Mlodzienski agree that Mlodzienski handcuffed Plaintiff at Varcoe's direction.  (Varcoe Dep. 27; Mlodzienski Dep. 23.)  Even if the Court did not accept Plaintiff's testimony for summary judgment purposes, Varcoe may nonetheless be liable for his role in directing Mlodzienski's actions.  *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995) ("[Plaintiffs] must show that [defendant officer] participated in violating their rights, or that he directed others to violate them, or that he, as the person in charge of the raid, had

knowledge of and acquiesced in his subordinates' violations.").

B.    Whether Seizure was Unreasonable

Defendants argue in the alternative that, even if Varcoe seized Plaintiff, such seizure was reasonable and therefore did not violate the Fourth Amendment.  To make out an excessive force claim under the Fourth Amendment, Plaintiff must show that an unreasonable seizure occurred.  *Curley*, 499 F.3d at 203 n. 4.  A seizure is reasonable under the Fourth Amendment if, under the totality of the circumstances, "the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight.  *Id*. at 396.  Additional factors include: the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

"The reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004).  "[A] police officer who is accused of

having used excessive force is not 'precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff,' but that 'contention . . . must be considered at trial.'" *Id*. at 199 (quoting *Bennett v. Murphy*, 274 F.3d 133, 137 (3d Cir. 2002)) (emphasis omitted). However, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (citations and internal quotation marks omitted).

Defendants argue that, even assuming Plaintiff's version of events is correct, the force used by Varcoe was reasonable under the circumstances facing him at the time. They note that Skala had threatened to shoot police attempting to arrest him. When the officers arrived at Plaintiff's home, they did not know who lived there or what Skala looked like. Next, the door was answered by an unknown man who hesitated in answering Varcoe's first question. The unknown man was armed. After disarming him, he was kept in handcuffs only a short time, until Varcoe viewed his identification. Finally, Defendants argue that Plaintiff's evidence indicates he was not seriously injured by the incident.

Precedent from the Third Circuit Court of Appeals applying the totality of the circumstances test in the excessive force context is highly fact-specific. However, several cases provide instructive parameters.

In *Sharrar*, the Court of Appeals held defendant officers' conduct in arresting four men was not excessive force in violation of the Fourth Amendment. Police had been advised that at least one of the arrestees, with the assistance of others, had used a gun in a violent episode. 128 F.3d at 822. Police surrounded the suspect's house and instructed the four men inside to walk backwards out of the house. *Id*. at 816. They complied and were

12

ordered to lie face down on the ground as they exited. *Id*. The police then yelled threats such as "keep your f**king head down or I'll blow it the f**k off," pointed a gun into the back of at least one man's head, and pushed a knee into at least one man's back. *Id*. The court determined that, "[a]lthough these police officers came close to the line[,]" circumstances in the totality did not rise to a Fourth Amendment violation. The court noted that the alleged gun was unaccounted for; there had been a suggestion the men were involved with drugs; and the men were not forced to lie on the ground longer than was necessary to handcuff and secure them. *Id*. at 822.

In *Mellott v. Heemer*, the court similarly held that federal officers did not use unconstitutionally excessive force. 161 F.3d 117 (3d Cir. 1998). There, a bankruptcy court directed the U.S. Marshal Service to remove plaintiff former landowners from their foreclosed property. *Id*. at 119. The federal officers were informed that plaintiffs refused to leave the property; owned firearms; had threatened to shoot a county employee; and that one plaintiff had recently sustained a head injury and was considered unstable. *Id*. at 119-20. When the officers arrived at the property, there were two additional visitors present and one occupant was located in another part of the property from the officers' initial point of entry. *Id*. at 120. The court found that the officers did not use excessive force by pointing guns at plaintiffs; pushing one plaintiff down into a chair on two occasions; and leading one plaintiff at gunpoint to locate the missing occupant. *Id*. at 122. The court emphasized the number of people the officers had to contend with (five people to ten officers) and the uncertainty of the circumstances, in which deadly force was threatened and occupants were in different locations. *Id*. at 123. The court further noted that, although some force was used, no

physical injury resulted.[5]  *Id*.

In contrast, the Third Circuit Court of Appeals held that police used unconstitutionally excessive force in *Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995).  There, a visiting family approached the home of a relative at the same time as police commenced a drug raid on the home.  *Id.* at 1188.  Police pointed guns at the family, pushed them to the ground, and handcuffed them.  *Id.* at 1193.  The court found this action to constitute excessive force because "the [family members'] appearances were those of a family paying a social visit, and ... there is simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used."  *Id.*

Looking at the relevant factors and the above-cited precedent, the Court finds that the facts viewed in the light most favorable to Plaintiff could support a finding that the force used by Varcoe was unreasonable.  While the present circumstances share factors leading to the results in *Sharrar* and *Mellott*, they also present facts under which, as in *Baker*, even a relatively minor amount of force is unreasonable.  The officers here were aware that Skala had made threats against police. They did not know who was inside Plaintiff's house.  The door was answered by an unknown person.  Varcoe did not exert any force until becoming aware that the unknown person was armed.  After that, he grabbed Plaintiff, pushed him

---

[5]     Defendants put much emphasis on the argument that Plaintiff did not experience serious injury. This is a relevant, but certainly not dispositive factor.  *See Sharrar*, 128 F.3d at 822 ("We do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality."); *see also Mellott*, 161 F.3d at 123 (citing "the lack of any physical injury to the plaintiffs" as one of the factors supporting court's conclusion that force used was objectively reasonable).

down, and handcuffed him until being shown his identification by Plaintiff's wife. Given the threat of violence and uncertainty of the circumstances, these facts by themselves would likely fall within the parameters of *Sharrar* and *Mellott*. However, Plaintiff asserts that Varcoe continued to use force while he was handcuffed by holding and pressing down on them in spite of Plaintiff's screams of pain and protestations of a bad back. There is no suggestion that Plaintiff struggled with the officers after being handcuffed or that pressure on the handcuffs was otherwise necessary to keep Plaintiff under control, particularly where two officers and a security guard were available to subdue him if necessary. A reasonable jury could find that the continued exertion of force, clearly causing Plaintiff great pain, was unreasonable after he voluntarily surrendered his weapon, was handcuffed, and was on his knees outside the house. The Court therefore declines to grant summary judgment in Defendants' favor on the grounds that Varcoe's use of force was objectively reasonable.

## C. Qualified Immunity

Defendants additionally argue that Varcoe is entitled to qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether qualified immunity applies is a two-step process: "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right." *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006). Second, "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'" *Id*. A right is clearly established when its meaning is "sufficiently clear that a reasonable official would understand

what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The U.S. Supreme Court recently held there is no mandatory sequence in applying the two steps of the analysis. *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 2009 U.S. LEXIS 591 (2009). Thus, a determination that there exists a dispute of fact as to the first step does not necessarily preclude the application of qualified immunity if the right at issue was not clearly established.

Viewing the disputed facts in light most favorable to Plaintiff, Varcoe is not entitled to qualified immunity at this stage. As the Third Circuit Court of Appeals has noted, the "factors relevant to the excessive force analysis are well-recognized." *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006); *see also Estate of Smith v. Marasco*, 430 F.3d 140, 150 (3d Cir. 2005) ("A reasonable officer would be guided by the *Sharrar* factors in determining whether to use overwhelming force in a given situation," and thus "if an officer applies the *Sharrar* analysis in an unreasonable manner, he is not entitled to qualified immunity."). As discussed above, under existing precedent, the relevant factors would suggest that little or no force was reasonable once Plaintiff was disarmed, handcuffed, in the presence of two officers as well as a security guard, and there is no indication he was resisting his custody. *See also Couden*, 446 F.3d at 497 (no qualified immunity on excessive force claim where there was no indication plaintiff was a threat, armed, resisting, or attempting to flee, and sufficient officers were present to subdue plaintiff if necessary).

### III. Unlawful Search – Count II

In Count II of Plaintiff's amended complaint, he raises a claim against Gutowski for an allegedly unreasonable, warrantless search of Plaintiff's vehicle in violation of the Fourth

Amendment. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.*

Defendants argue that Gutowski is entitled to summary judgment in his favor as to Plaintiff's unlawful search claim. They argue that the officer obtained the valid consent of Plaintiff to search his vehicle for his gun. They also argue that Gutowski is entitled to qualified immunity. Because the Court agrees that Gutowski is entitled to qualified immunity on the grounds that he did not violate Plaintiff's clearly established constitutional right, Defendant's first argument need not be addressed. *See Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 2009 U.S. LEXIS 591 (2009) (holding there is no mandatory sequence in applying the qualified immunity analysis).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Even if the an officer violates a plaintiff's Fourth Amendment rights by conducting an unreasonable, warrantless search, he may still enjoy immunity for reasonable mistakes as to the legality of his action. *Id.* at 206 (citing *Anderson v. Creighton,* 483 U.S. 635 (1987). The relevant inquiry in such case asks whether, viewed objectively, a reasonable officer could have believed the officer's

warrantless search to be lawful in light of clearly established law and the information the searching officers possessed. *Anderson*, 483 U.S. at 641.

The law concerning the validity of Plaintiff's consent is well-settled. It is long-established that an officer may undertake a search without a warrant or probable cause if an individual consents to the search. *United States v. Kim*, 27 F.3d 947, 955 (3d Cir. 1994) (citing *Schneckloth*, 412 U.S. at 219). To be valid, consent must be freely and voluntarily given. *Schneckloth*, 412 U.S. at 222. "Consent is a question of fact determined from the totality of the circumstances." *United States v. Antoon*, 933 F.2d 200, 204 (3d Cir. 1991). The critical inquiry in determining whether consent is voluntary asks "whether, under the circumstances, the consent was an exercise of free will or whether the actor's free will 'has been overborne and his capacity for self-determination critically impaired.'" *Id.* (quoting *Schneckloth*, 412 U.S. at 225).

Examining the circumstances of the March 1, 2007 incident, the Court finds that a reasonable officer in Gutowski's position could have believed that he obtained Plaintiff's valid consent to search his vehicle. First, Gutowski approached Plaintiff in full uniform and identified himself as an officer. Second, there is no suggestion of any explicit or implicit coercion of Plaintiff by Gutowski. He did not physically touch Plaintiff at any point. (J Dep 298) He did not threaten to withhold medical care, but informed Plaintiff that an ambulance was en route prior to asking for consent. (SOF ¶ 116; R. Johnson Dep. 299-300; Gutowski Dep. 20.) He asked for permission to search only once. (R. Johnson Dep. 298)

Plaintiff argues that his consent was not voluntary because he was suffering from a stroke. However, he admits that he did not inform the PSP officers he was suffering from

a stroke and does not contravene Gutowski's testimony that he was not aware at the time. (SOF 117; Gutowski Dep 21.) While Plaintiff offers evidence that he was "moaning and groaning" while the officers were on the scene, had some difficulty seeing Gutowski,[6] and believes his speech may have been slurred, he also acknowledges that he was lucid and coherent when he answered Gutowski's request for permission to search the vehicle. (R. Johnson Dep. 142, 144-45; SOF ¶ 128; R. Johnson Aff. ¶ 49, Ex. 6, Doc. 74.) Gutowski testified that Plaintiff appeared to comprehend questions asked of him and conversed without effort. (Gutowski Dep. 22.) Moreover, Plaintiff proceeded to direct Gutowski to the precise location of his gun after giving consent. (SOF ¶ 124.) An officer in Gutowski's position could reasonably believe that, though Plaintiff appeared in need of medical attention, he nonetheless possessed the free will and capacity for self-determination necessary to voluntarily consent to a search. The Court will therefore grant Defendants' motion for summary judgment as to Plaintiff's unreasonable search claim against Gutowski on grounds of qualified immunity.

## IV. Damages

Defendants argue that, even assuming Plaintiff can demonstrate liability, they are entitled to summary judgment because Plaintiff cannot show that either Defendants' conduct

---

[6]     Referring to Gutowski's request for permission to search his vehicle, Plaintiff testified as follows:

> I heard Bob, Bob, Bob. And I tried to zero in on where the voice was coming from. And I was looking in the general direction because I couldn't see out of my left eye. I had a lot of rain in my face. And I said, yeah? ... He said, do I have your permission to search your vehicle? And I said, yeah, sure. That was it.

(R. Johnson Dep. 142.)

caused him damages or injury.  However, Plaintiff need not demonstrate injury as an element of a § 1983 claim in order to withstand summary judgment.  *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) ("A *prima facie* case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law.").  As explained in the commentary to the Third Circuit Model Civil Jury Instructions:

> It is true that the plaintiff cannot recover compensatory damages without showing that the defendant's violation of the plaintiff's federal rights caused those damages.  It would be misleading, however, to consider this an element of the plaintiff's claim: If the plaintiff proves that the defendant, acting under color of state law, violated the plaintiff's federal right, then the plaintiff is entitled to an award of nominal damages even if the plaintiff cannot prove actual damages.

3d Cir. Model Civil Jury Instructions § 4.3, Comment (2009).  The Court will not therefore grant summary judgment in Defendants' favor on this ground.


# CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of Defendants Varcoe and Gutowski will be granted in part and denied in part.  (Doc. 54)  The Court will deny the motion with respect to Count I and grant the motion with respect to Count II of Plaintiff's amended complaint.

An appropriate Order follows.


August 6, 2009                               /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT T. JOHNSON,

    Plaintiff,

       v.

WILD ACRES LAKES PROPERTY &
HOMEOWNERS ASSOCIATION, et al.,

    Defendants.

NO. 3:07-CV-1384

(JUDGE CAPUTO)

**ORDER**

    **NOW**, this   6th   day of August, 2009, **IT IS HEREBY ORDERED** that the Motion

for Summary Judgment of Defendants Kevin Varcoe and Peter Gutowski (Doc. 54) is

**GRANTED in part** and **DENIED in part** as follows:

    (1)    Defendants' motion for summary judgment is **DENIED** with respect to Count

            One of Plaintiff Robert Johnson's Amended Complaint (Doc. 17).

    (2)    Defendants' motion for summary judgment is **GRANTED** with respect to Count

            Two of Plaintiff Robert Johnson's Amended Complaint (Doc. 17).

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge